UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD PURVIS,<br><br>        Plaintiff,<br><br>    v.<br><br>ARCADIS U.S., INC., as successor in interest to MALCOLM PIRNIE, INC.; MALCOLM PIRNIE, INC.; and DOES 1 TO XX, inclusive,<br><br>        Defendants. | No. 2:13-cv-00582-GEB-KJN<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS** |

        Defendants Arcadis U.S., Inc. ("Arcadis") and Malcolm Pirnie, Inc. ("Malcolm Pirnie") (collectively, "Defendants") move under Federal Rules of Civil Procedure ("Rules") 12(b)(6) and 19 for an order dismissing Plaintiff's First Amended Complaint ("FAC"), which comprises the following seven state-law claims: 1) breach of oral contract, 2) breach of implied partnership agreement, 3) fraud, 4) fraud, 5) breach of the implied covenant of good faith and fair dealing, 6) common count: services rendered, and 7) fraud. Plaintiff opposes the motion. Diversity jurisdiction is the alleged basis of subject-matter jurisdiction.

**I. FACTUAL BACKGROUND**

        The following allegations in Plaintiff's FAC concern the motion. Plaintiff and Malcolm Pirnie, which "is, and at all

1

times mentioned has been, a corporation, incorporated under the laws of New York," entered into "a written agreement . . . effective [in] July 2007" (hereinafter referenced as "2007 Contract") governing "recruiting services, candidate research, and acquisition services relating to potential acquisitions by Malcolm Pirnie." (FAC ¶¶ 2, 12, ECF No. 18.) In addition to the 2007 Contract, "[a]s part of an oral agreement implicit in the conduct of the parties at the time that [P]laintiff and Malcolm Pirnie started their business relationship and thereafter, the parties . . . agreed that [Plaintiff] would have a joint interest in and responsibility for the profitability of the business." (Id. ¶ 13.)

"In approximately 2006 and 2007, Malcolm Pirnie began seriously exploring the potential purchase by and/or merger with other companies, including Arcadis." (Id. ¶ 16.) "On or about September 10, 2008, Malcolm Pirnie executive management . . . requested that [P]laintiff consult with and assist William Kraekel . . . with the negotiations for this transaction with Arcadis." (Id.) Plaintiff was "assured that he was a major stakeholder, that he would be 'taken care of' after the sale to Arcadis had been completed, and that money would be set aside to facilitate distribution to non-shareholders." (Id. ¶ 16.) "On or about September 10 and 11, 2008," Mr. Kraekel told Plaintiff that "if the sale to Arcadis proceeded as planned, the shareholders would receive their full payment in two installments, the final of which would not occur until July 2012," and "distribution to non-shareholders [like Plaintiff] would only be made after the shareholders had received their designated proportion of the

profits." (Id. ¶ 18.)

"Plaintiff devoted substantial amounts of time to [the sale to Arcadis], even though not required [to] by [the 2007] [C]ontract, with the understanding that, as an acknowledged strategic partner and 'major stakeholder' with Malcolm Pirnie, he would receive a proportionate share of profits earned from the sale." (Id. ¶ 16.) "The sale of Malcolm Pirnie to Arcadis was completed on or about June 25, 2009." (Id. ¶ 20.) "On or about November 3, 2011[,] Plaintiff was informed . . . that no money had been set aside or otherwise designated for payment to [P]laintiff and that he would not receive any of the profits from the sale." (Id. ¶ 26.)

Earlier in 2009, "prior to but in anticipation of the sale of Malcolm Pirnie to Arcadis, . . . [Mr.] Kraekel asked [P]laintiff to recruit [Guy] Matelli to join Arcadis in light of the pending sale." (Id. ¶ 57.) "At that time, [P]laintiff did not have a contract to recruit with Arcadis . . . . Accordingly, it was orally agreed by and between [P]laintiff, Malcolm Pirnie and Arcadis, that . . . [Mr.] Matelli's recruitment . . . was to result in payment to [P]laintiff of $90,000 . . . ." (Id. ¶ 58.) "In reliance on this expressed promise of payment for his services, . . . [P]laintiff . . . set about recruitment efforts which resulted in successfully persuading [Mr.] Matelli to join Arcadis," where he "commenced employment" "[i]n or about late May 2010." (Id. ¶ 59.) "[N]o compensation whatsoever for his successful recruitment of [Mr.] Matelli was made." (Id. ¶ 60.)

"Effective on July 1, 2010, [P]laintiff entered into another written contract" (hereinafter referenced as "2010

3

Contract") "with Malcolm Pirnie, as a wholly owned subsidiary of Arcadis," which "included a new 'incentive compensation payment' program that allowed [P]laintiff the opportunity to earn considerably more for the successful recruitment of executive level employees." (Id. ¶ 46.) "No [] assignments from Arcadis [outside the water division] were ever received, and thus [P]laintiff was deprived of the opportunity to realize the economic benefits offered by the incentive compensation provision." (Id. ¶ 50.) "[P]laintiff did not receive from Arcadis/Malcolm Pirnie the good faith cooperation and participation necessary to effectuate [P]laintiff's performance [of recruitment assignments] even within the water division and, to the contrary, senior management exhibited a routine of impeding performance." (Id. 50.)

### A. 2007 and 2010 Contracts

Defendants state they attached "true and correct copies of" the referenced 2007 and 2010 Contracts as exhibits to their motion. (See Mem. P. & A. in Supp. Defs.' Mot. to Dismiss ("Defs.' Mot.") 2 n.1, Exs. 1 & 2, ECF Nos. 20-1, 20-2, 20-3.) Plaintiff has not disputed the authenticity of what Defendants contend are the 2007 and 2010 Contracts. Further, Plaintiff cites to the exhibit Defendants describe as the 2010 Contract in his opposition brief, where he disputes the meaning of the language in that contract. (Pl.'s Opp'n 7:20, ECF No. 23.)

Since Plaintiff alleges the existence of the 2007 and 2010 Contracts in his FAC, "and the parties do not dispute the authenticity of the[se] document[s]," which "[D]efendant[s] attache[d] to [their] motion to dismiss," the documents are

4

1  considered under the "incorporation by reference doctrine".
2  Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005) (quoting In
3  re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 986 (9th Cir.
4  1998)). Under this doctrine a court is permitted "to take into
5  account documents 'whose contents are alleged in a complaint and
6  whose authenticity no party questions, but which are not
7  physically attached to the [plaintiff's] pleading,'" Knievel, 393
8  F.3d at 1076, "without converting the motion to dismiss into a
9  motion for summary judgment." U.S. v. Ritchie, 342 F.3d 903, 908
10 (9th Cir. 2003).

11         The following portions of the 2007 and 2010 Contracts
12 are germane to the motion. The named parties to each contract are
13 Malcolm Pirnie and "The Purvis Company," with "Ron L. Purvis"
14 listed as the signatory for The Purvis Company. (2007 Contract 4,
15 2010 Contract 4.) The 2007 Contract describes the "scope of work"
16 as "RECRUITING SERVICES," "CANDIDATE RESEARCH SERVICES," and
17 "ACQUISIION SERVICES . . . relating to potential acquisitions by
18 [Malcolm] Pirnie." (2007 Contract ¶ 2.) The 2010 Contract
19 describes the "scope of work" as "RECRUITING SERVICES," and
20 contains a provision stating it "shall be construed and enforced
21 in accordance with the laws of the State of New York." (2010
22 Contract ¶¶ 2, 10.)

## II. DISCUSSION

### A. First, Second, Third, and Fourth Claims

#### 1. Statute of Limitations

26         Defendants argue Plaintiff's first, second, third, and
27 fourth claims should be dismissed because each of these claims is
28 barred by the applicable statute of limitations. The statute of

5

1  limitations for Plaintiff's first claim, in which he alleges
2  breach of an oral contract, and for his second claim, in which he
3  alleges breach of an implied contract, is, as prescribed in
4  California Civil Procedure Code § 339, two years. The statute of
5  limitations for Plaintiff's third and fourth fraud claims is, as
6  prescribed in California Civil Procedure Code § 338(d), three
7  years.

8  Each of these claims is based on the sale of Malcolm
9  Pirnie, Inc. to Arcadis U.S., Inc. on June 25, 2009 and
10 Plaintiff's allegation that Defendants failed to pay him a
11 portion of the sale proceeds. Defendants assert that the statute
12 of limitations period for each claim commenced on June 25, 2009,
13 and since Plaintiff did not file the instant lawsuit until more
14 than three years later on January 17, 2013, each claim is time-
15 barred. (Defs.' Mot. 6:5-6, 12-13, 24-26.)

16 Plaintiff rejoins that the statute of limitations
17 period did not commence in June 2009 since he "does not allege
18 that the breach occurred on the date of the sale." (Pl.'s Opp'n
19 3:2-3.) Plaintiff contends the statute of limitation period
20 commenced for each of these claims in July 2012, and Plaintiff
21 supports this contention, citing, inter alia, the following
22 allegations in the FAC:

23 > 18. . . . [Mr.] Kraekel[, Vice President of Malcolm Pirnie,] . . . advised [P]laintiff that [payments from the sale of Malcolm Pirnie to Arcadis] to non-shareholders [like Plaintiff] would only be made after the shareholders had received their designated proportion of the profits. Krae[k]el further represented that if the sale to Arcadis proceeded as planned, the shareholders would receive their full payment in two installments, the final of which would not

6

>         occur until July 2012.
>
>         . . . .
>
>         26. On or about November 3, 2011 Plaintiff was informed . . . that no money had been set aside or otherwise designated for payment to [P]laintiff and that he would not receive any of the profits from the sale. Based on that conversation, . . . [P]laintiff first had cause to reasonably conclude Malcolm Pirnie did not intend to honor i[ts] contractual commitment . . . .

(FAC ¶¶ 18, 26 (emphasis added).)

Fraud claims are "deemed to have accrued [at] the discovery, by the aggrieved party, of the facts constituting the fraud." Cal. Civ. Proc. Code § 338(d). Therefore, Plaintiff's fraud claims accrued—and the statute of limitations period for those claims commenced—on or about November 3, 2011 since Plaintiff alleges at that time he "was informed . . . that he would not receive any of the profits from the sale," and since he alleges that this is when he "first had cause to reasonably conclude [Defendant] Malcolm Pirnie did not intend to honor i[t]s contractual commitment." (FAC ¶ 26.) Based on Plaintiff's allegations, the three-year statute of limitations period for fraud expired on or about November 3, 2014. Since Plaintiff filed his suit on January 17, 2013, Defendants have not shown the statute of limitations bars Plaintiff's third and fourth fraud claims.

Plaintiff's first and second claims "for breach of contract accrue[d] at the time of breach, which then start[ed] the limitations period running." Cochran v. Cochran, 56 Cal. App. 3th 1115, 1120 (1997). "There can be no *actual* breach of a

7

contract until the time specified therein for performance has arrived." Romano v. Rockwell Int'l, Inc., 14 Cal. 4th 479, 488 (1996) (quoting Taylor v. Johnston, 15 Cal. 3d 130, 137 (1975)). Plaintiff alleges Defendants promised him that as a non-shareholder he would receive payment based on the sale of Malcolm Pirnie "after the shareholders had received their designated proportion of profits." (FAC ¶ 18) Since Plaintiff alleges "the final [payment to shareholders] would not occur until July 2012," payment could not be due to Plaintiff before July 2012. (Id.) Therefore, based on the allegations in Plaintiff's FAC, Defendants could not have breached the contract before July 2012, and Plaintiff's contract claims did not accrue before July 2012. Accordingly, the two-year statute of limitations period for Plaintiff's contract claims expired no earlier than July 2014. Since Plaintiff filed his suit on January 17, 2013, Defendants have not shown the statute of limitations bars Plaintiff's first and second contract claims.

**2. Parol Evidence Rule**

Defendants also seek dismissal based on the parol evidence rule, arguing Plaintiff's first, second, third, and fourth claims are "foreclosed by the express terms of the fully integrated written agreements between Plaintiff[] and Malcolm Pirnie." (Defs.' Mot. 8:23-24.) In particular, Defendants argue: "The 2007 Contract specifically describes all the terms under which Plaintiff was entitled to payment for the authorized services that [Plaintiff] performed, and nowhere does the Contract state that Plaintiff was entitled to a share in the profits of Malcolm Pirnie or Arcadis"; and "the 2010 Contract

8

1  'supersede[d] all prior agreements, arrangements and
2  understandings, written or oral, relating to the performance of
3  services' by Plaintiff." (Id. 10:2-6, 11:22-24 (quoting 2010
4  Contract ¶ 11).)

5  Plaintiff rejoins that the parol evidence rule does not
6  bar his claims. Specifically, Plaintiff argues the 2007 Contract
7  only governed "employment recruiting services and [] services
8  relating to *acquisitions* by Malcolm Pirnie," not "services
9  provided with regard to the *sale of* Malcolm Pirnie to another
10 company." (Pl.'s Opp'n 5:26-28.) Plaintiff also argues the 2010
11 Contract "has nothing to do with the different obligations that
12 befell Defendants when Arcadis purchased Malcolm Pirnie one year
13 earlier" in 2009. (Id. 7:7-8.)

14 The parol evidence rule "does not exclude other
15 evidence . . . to establish . . . fraud." Riverisland Cold
16 Storage, Inc. v. Fresno-Madera Prod. Credit Ann'n, 55 Cal. 4th
17 1169, 1175 (2013) (quoting Cal. Code Civ. Pro. § 1856(g))
18 (reaffirming the fraud exception to the parol evidence rule and
19 overruling Bank of Am. Nat. Trust & Savings Ass'n v. Pendergrass,
20 4 Cal. 2d 258 (1935)). Therefore, the parol evidence rule does
21 not bar Plaintiff's third and fourth fraud claims.

22 California's parol evidence rule prescribes: "The
23 execution of a contract in writing . . . supersedes all the
24 negotiations or stipulations concerning its matter which preceded
25 or accompanied the execution of the instrument." Cal. Civ. Proc.
26 Code § 1625 (emphasis added).

27 The respective subject matters of the 2007 and 2010
28 Contracts are as follows:

9

| Agreement | Subject Matter | Citation |
|---|---|---|
| 2007 Contract | - "RECRUITING SERVICES"<br>- "CANDIDATE RESEARCH SERVICES"<br>- "ACQUISITION SERVICES . . . relating to potential acquisitions by [Malcolm] Pirnie" | 2007 Contract ¶ 2 |
| 2010 Contract | - "RECRUITING SERVICES" | 2010 Contract ¶ 2 |

The 2007 and 2010 Contracts cover specific services Plaintiff was to perform, but neither covers services related to the sale of Malcolm Pirnie. Therefore, Defendants have not shown the parties "intend[ed] [for the integration clauses in the 2007 and 2010 Contracts] to preclude an oral agreement involving a different subject matter": services related to the sale of Malcolm Pirnie to Arcadis. Mytee Prods., Inc. v. H.D. Prods., Inc., No. 05-cv-2286 R(CAB), 2007 WL 1813765, at *6 (S.D. Cal. June 22, 2007). Accordingly, Defendants have not shown the parol evidence rule bars Plaintiff's first and second contract claims, and this portion of Defendants' motion is denied.

**B. Fifth Claim**

Defendants argue Plaintiff's fifth claim for breach of "the implied covenant of good faith and fair dealing by failing to provide him with additional recruiting assignments" under the 2010 Contract should be dismissed for three reasons: 1) "the basis of his claim" rests on an alleged oral promise that is vague; 2) "Plaintiff's [oral promise] claim is foreclosed by the integration clause of the 2010 Contract itself"; and 3) "the alleged commitment [to provide recruitment assignments] is

10

unsupported by the express terms of the 2010 Contract" since it did not "guarantee Plaintiff any specific number of assignments." (Defs.' Mot. 13:8-10, 12:25-26, 14:17-18, 13:12-14, 13:20-21, 22-23.)

Plaintiff counters: "Defendants mischaracterize the gravamen of this cause of action. The claim is not based on [an] oral promise . . . . The basis for the claim is the written [2010] [C]ontract [stating] that Plaintiff would be paid for successful recruitments." (Pl.'s Opp'n 7:27-8:1.) Plaintiff also argues: "The basis for the claim is the legally implied promise to cooperate and to not intentionally deprive Plaintiff of the full benefits of the written contract" by offering him recruitment assignments. (Id. 8:2-4.)

A review of Plaintiff's FAC evinces that Plaintiff alleges this claim based on the 2010 Contract, not an oral agreement. That contract states it "shall be construed and enforced in accordance with the laws of the State of New York." (2010 Contract ¶ 10.) Plaintiff and Defendants agree that New York law applies to a claim for a breach of the 2010 Contract's implied covenant of good faith and fair dealing. (Defs.' Supplemental Br. 2:24-25, ECF No. 32; Pl.'s Supplemental Br. 1:27, ECF No. 33.)

"When a federal court sits in diversity, it must look to the forum state's"—here, California's—"choice of law rules to determine the controlling substantive law." Patton v. Cox, 276 F.3d 493, 495 (9th Cir. 2002) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941)).

California's choice of law framework is set

>    forth in Restatement § 187(2) and in <u>Nedlloyd Lines B.V. v. Superior Court</u>, 3 Cal. 4th 459, 11 (1992). "California courts apply the parties' choice of law unless the analytical approach articulated in § 187(2) of the Restatement (Second) of Conflict of Laws ("187(2)") dictates a different result." <u>Hoffman v. Citibank (S.D.), N.A.</u>, 546 F.3d 1078, 1082 (9th Cir.2008) (citation omitted). As a threshold matter, a court must determine "whether the chosen state has a substantial relationship to the parties or their transaction, or . . . whether there is any other reasonable basis for the parties' choice of law." <u>Nedlloyd</u>, 3 Cal. 4th at 466 (citing Rest., § 187(2)).

<u>Ruiz v. Affinity Logistics Corp.</u>, 667 F.3d 1318, 1323 (9th Cir. 2012). "A substantial relationship exists where one of the parties is domiciled or incorporated in the chosen state." <u>ABF Capital Corp. v. Osley</u>, 414 F.3d 1061, 1066 (9th Cir. 2005) (citing <u>Nedlloyd</u>, 3 Cal. 4th at 467). Plaintiff alleges in his FAC: "Malcolm Pirnie . . . is, and at all times mentioned has been, a corporation, incorporated under the laws of New York," (FAC ¶ 2), and Defendants contend: "New York has a relationship to the parties because Malcolm Pirnie, prior to its acquisition by Arcadis, was a corporation organized [under] the laws of New York, with its principal place of business in New York." (Defs.' Supplemental Br. 2:18-20.) Therefore, a substantial relationship exists between the parties and the state of New York.

"[T]he court must next determine whether the chosen state's law is contrary to a *fundamental* policy of California." <u>Nedlloyd</u>, 3 Cal. 4th at 466. Here, each party favors applying New York law, and "the parties' choice generally will be enforced" unless it is "establish[ed] both that the chosen law is contrary to a fundamental policy of California and that California has a

12

materially greater interest in the determination of the particular issue." Wash. Mut. Bank, FA v. Sup. Ct., 24 Cal. 4th 906, 917 (2001). Since this has not been established, New York law applies.

Under New York contract law, "th[e] covenant [of good faith and fair dealing] includes 'an implied undertaking on the part of each party that he will not intentionally and purposefully do anything to prevent the other party from carrying out the agreement on his part.'" Carvel Corp. v. Diversified Mgmt. Grp., Inc., 930 F.2d 228, 230 (2d Cir. 1991) (quoting Grad v. Roberts, 14 N.Y. 2d 70, 75 (1964)).

Here, Plaintiff alleges he "did not receive from [Defendants] the good faith cooperation and participation necessary to effectuate [his] performance," and "management exhibited a routine of impeding performance" of recruitment assignments. (FAC ¶ 50.) Therefore, Defendants have not shown Plaintiff's breach of the implied covenant of good faith and fair dealing claim should be dismissed, and this portion of Defendants' motion is denied.

**C. Sixth Claim**

Defendants argue, inter alia, that Plaintiff's sixth claim for a common count: services rendered for "compensation based on an oral promise pertaining to the recruitment of [Mr.] Matelli [to Arcadis] in 2009 . . . is barred by the applicable [two-year] statute of limitations." (Defs.' Mot. 15:3-6.) Specifically, Defendants argue this claim accrued "'in late May 2010'" "when Plaintiff admits [in his FAC] that Mr. Matelli began his employment with Arcadis," and therefore the two-year statute

13

of limitations had expired by the time Plaintiff filed his complaint in January 2013. (Id. 15:19-20 (quoting FAC ¶ 59).)

Plaintiff counters that this claim is not subject to a two-year statute of limitations, but instead is subject to "the three-year statute" of limitations in California Code of Civil Procedure section 338(d) since the common count claim includes "allegations of fraud and/or mistake." (Pl.'s Opp'n 9:4-5.) Plaintiff also argues: "[E]ven if [this] claim . . . were subject to a two-year statute of limitations," he is entitled to delayed accrual of this claim under the discovery rule since he "did not learn . . . Defendants did not intend to pay [him] . . . until he was so informed in November 2011." (Id. 9:7-8, 13-16.)

California Civil Procedure Code section 339(1) prescribes in pertinent part that the statute of limitations is two years for "[a]n action upon a[n] . . . obligation or liability not founded upon an instrument of writing." Plaintiff's common count claim is "not founded upon an instrument of writing," id.; instead, this claim is based on an alleged oral agreement "between [P]laintiff, Malcolmn Pirnie and Arcadis, that [P]laintiff would be compensated [$90,000] if he successfully recruited [Mr.] Matelli" to be employed by Arcadis. (FAC ¶ 58.) California Civil Procedure Code section 338(d) prescribes in pertinent part that the statute of limitations is three years for "[a]n action for relief on the ground of fraud or mistake." Since Plaintiff "does not explicitly allege *any* fraudulent act or mistake" in his common count claim, "the two-year statute of limitations under California Code of Civil Procedure section 339(1) must apply," rather than the three-year statute of

14

limitations under section 338(d). <u>Boon Rawd Trading Co. v. Paleewong Trading Co.</u>, 688 F. Supp. 2d 940, 955-56 (N.D. Cal. 2010).

"The statute of limitations for quasi-contractual claims," of which a common count for services rendered is a variety, "begins to run immediately upon performance of the service at issue." <u>Roots Ready Made Garments v. Gap, Inc.</u>, No. 07-cv-3363 CRB, 2007 WL 3045999, at *5 (N.D. Cal. Oct. 18, 2007) (citing 3 Witkin, Cal. Proc. Actions § 508 (4th ed. 1996)); <u>see also</u> <u>Ough v. Ansonia Oil Co.</u>, 99 Cal. App. 769, 772 (1929) (holding the statute of limitations for "a common count . . . for materials furnished and services rendered . . . begins to run [on] the date when the materials were furnished and the labor was performed"). Therefore, the statute of limitations commenced for Plaintiff's common count claim no later than "late May 2010," when Mr. "Matelli commenced employment with Arcadis," and at which time Plaintiff's recruitment activity concerning Mr. Matelli was complete. (FAC ¶ 59.) Plaintiff cannot "rely on the discovery rule for delayed accrual of [this claim]" until sometime in November 2011 since Plaintiff has not "specifically ple[d] facts to show . . . [he was not able] to have made earlier discovery despite reasonable diligence." <u>Fox v. Ethicon Endo-Surgery, Inc.</u>, 35 Cal. 4th 797, 808 (2005) (quoting <u>McKelvey v. Boeing N. Am., Inc.</u>, 74 Cal. App. 4th 151, 160 (1999)). Accordingly, the statute of limitations expired no later than two years after Mr. Matelli commenced employment in late May 2012. Since Plaintiff brought his common count claim in January 2013, it is time-barred. Therefore, this portion of Defendants' motion

is granted.

### D. Seventh[1] Claim

Defendants argue Plaintiff's seventh claim, in which fraud is alleged, is barred by the parol evidence rule, contending it "is barred by the express terms of the 2007 and 2010 Contracts." (Defs.' Mot. 18:1-2.) However, the parol evidence rule does not bar fraud claims.

Defendants also argue for the first time in their reply brief that "Plaintiff fails to meet [Rule 9(b)'s] heightened pleading requirements for fraud claims." (Defs.' Reply 7:13-14, ECF No. 24.) However, a "district court need not consider arguments raised for the first time in a reply brief." Zamani v. Carnes, 491 F.3d 990, 997 (9th Cir. 2007). Therefore, this portion of Defendants' motion is denied.

### D. Failure to Join the Purvis Company as a Party

Finally, Defendants argue the FAC "should be dismissed [under Rule 19(a)] for the additional reason that Plaintiff failed to join [The Purvis Company,] the actual, and indispens[a]ble, party to the written agreements with Malcolm Pirnie." (Defs.' Mot. 19:3-5.) Plaintiff counters: "'The Purvis Company' is simply a name used by Plaintiff to conduct his personal business[, and t]here is no legally recognized entity known as The Purvis Company with the legal capacity to sue or be sued." (Pl.'s Opp'n 10:7-10.)

"The moving party has the burden of persuasion in

---

[1] Plaintiff labels this claim in his FAC as his "eighth cause of action," (FAC 14:6-7), but this is the last of seven claims in his FAC. Further, in each party's brief, this claim is referenced as the seventh claim. Therefore, this claim is referenced herein as Plaintiff's seventh claim.

16

arguing for dismissal" under Rule 19. Clinton v. Babbitt, 180 F.3d 1081, 1088 (9th Cir. 1999) (quoting Shermoen v. United States, 982 F.2d 1312, 1317 (9th Cir. 1992)). Since Defendants have not satisfied this burden, this portion of Defendants' motion is denied.

### III. CONCLUSION

For the stated reasons, Plaintiff's sixth claim is dismissed. However, Plaintiff is granted fourteen (14) days from the date on which this order is filed to file an amended complaint addressing the deficiencies in the dismissed claim. Plaintiff is notified that failure to file an amended complaint within the prescribed time period could result in dismissal of that claim with prejudice under Rule 41(b).

Dated: April 9, 2014

_____
GARLAND E. BURRELL, JR.
Senior United States District Judge